**Luretta BYBEE, Plaintiff,**

v.

**OPER DER STANDT BONN (the Bonn Opera Company) and Gian–Carlo Del Monaco, Defendants.**

**No. 93 Civ. 3164 (SHS).**

United States District Court, S.D. New York.

Oct. 4, 1995.

---

Michael T. Stewart, Foyen & Partners, New York City, for plaintiff.

Eduardo L. Tabio, Fox & Horan, New York City, for defendants.

## OPINION

STEIN, District Judge:

Defendants Oper der Standt Bonn (the "Bonn Opera Company") and Gian–Carlo del Monaco have moved to dismiss the amended complaint in this action for lack of subject matter and personal jurisdiction and pursuant to the doctrine of forum non conveniens. Plaintiff Luretta Bybee has filed a cross-motion for leave to re-serve the amended complaint. Defendants' motion to dismiss the amended complaint on the grounds of forum non conveniens is granted and plaintiff's cross-motion for leave to re-serve the amended complaint is denied for the reasons set forth below.

### I.  *Background*

Bybee is an opera singer residing in New York City. She became acquainted with defendants Bonn Opera Company and its "Intendant"—General Manager—del Monaco in March 1991 when she auditioned in New York for a position with that opera company. Del Monaco conducted the audition and later attended a birthday party at Bybee's home. Bybee alleges that she was subsequently offered a position by del Monaco to perform for the Bonn Opera Company in Germany. Bybee's husband, who is also an opera singer, was offered a position by the defendants, but chose not to join the opera company. Bybee claims that the defendants refused to honor her contract as a result of her husband's decision. In addition to that breach of contract claim, Bybee asserts claims for intentional and negligent misrepresentation, negligent hiring, defamation, and intentional and negligent interference with prospective contractual relations.

Bybee filed her complaint in May of 1993. The Court appointed an international process server to serve the defendants in Germany in accordance with the Hague Convention. The Bonn Opera Company and del Monaco were subsequently served in September and November, respectively. In a letter dated October 6, 1993, Dr. Erich Raeder, an attorney admitted to the bar in Germany, sent a letter

to the Court, in German, stating that he would be representing the defendants and requesting an additional month in order to respond to the complaint. The next month he sent an additional letter addressing the merits of Bybee's claims. Although the Court did not respond to the letters, plaintiff's counsel notified Dr. Raeder that he would need "to retain local counsel and submit an answer in compliance with the applicable rules of [the] Court." Stewart Declaration ¶ 7. Defendants never provided any additional response.

On June 14, 1994, a default judgment was entered against defendants permitting plaintiff to recover damages sustained "on account of the claims for relief demanded in the complaint." The matter was referred for a determination of damages to a Magistrate Judge, who concluded that the damages clause in the complaint lacked sufficient specificity because it stated merely that Bybee had suffered damages in excess of $50,000.00. The Magistrate Judge notified Bybee that she could either limit judgment to $50,000.00 or file a motion to vacate the default judgment and file an amended complaint. Bybee chose the latter option, and in March of this year the Court granted Bybee's motion to vacate the default judgment and to permit the filing of an amended complaint. The Court ordered that "service of process upon the defendants, Oper Der Standt Bonn (the Bonn Opera Company) and Gian–Carlo Del Monaco and Dr. Erich Raeder, counsel for defendants, shall be made with translations by international federal express with such service good and valid." Order dated March 7, 1995.

On April 26, 1995, Bybee served defendants and their German attorney, Dr. Raeder, in the manner set forth in the Court's order. Defendants are now represented by counsel admitted to the bar of this Court. In the amended complaint, Bybee seeks damages of $178,303.18 for breach of contract, negligent misrepresentation, and negligent interference with prospective contractual relations, and $10,000,000.00 for intentional misrepresentation, negligent hiring, defamation, and intentional interference with prospective contractual relations.

Defendants now move to dismiss the amended complaint.

## II. *Subject Matter Jurisdiction*

■ The defendants claim that this Court lacks jurisdiction because defendants are immune from jurisdiction pursuant to the Foreign Sovereign Immunities Act (the "FSIA"). The FSIA provides that a foreign state, including "an agency or instrumentality of a foreign state," is "immune from the jurisdiction of the courts of the United States" unless it comes within certain exclusions set forth within the FSIA. 28 U.S.C. §§ 1603(a), 1604.

Bybee does not challenge defendants' assertion that they are an agency or instrumentality of a foreign state as defined in the FSIA. *See* 28 U.S.C. § 1603(b). Instead, she claims that the activity in question is within the statutory exception to immunity which provides that a foreign state shall not be immune in any case "in which the action is based upon a commercial activity carried on in the United States in connection with a commercial activity of the foreign state elsewhere...." 28 U.S.C. § 1605(a)(2); *see also Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241 (2d Cir.1994). Commercial activity is defined as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992).

The relevant conduct here, engaging an opera singer to perform personal services, constitutes commercial activity, as acknowledged by defendants' counsel at the oral argument of these motions. Accordingly, defendants' motion to dismiss the amended complaint insofar as it was predicated on a lack of subject matter jurisdiction is denied.

## III. *Personal Jurisdiction*

The defendants also contend that this Court lacks personal jurisdiction over them due to improper service of process. Under the FSIA, "the statutory aspect of personal jurisdiction [is] simple: subject matter jurisdiction plus service of process equals personal jurisdiction." *Seetransport Wiking Trader v. Navimpex Centrala Navala*, 989 F.2d

572, 579 (2d Cir.1993) (quoting *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 308 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982)).

■ The FSIA provides the sole basis for obtaining jurisdiction over a foreign state. *Commercial Bank of Kuwait,* 15 F.3d at 240 (citing *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 439, 109 S.Ct. 683, 690, 102 L.Ed.2d 818 (1989)). Section 1608 of the FSIA provides that service may be made on an agency or instrumentality of a foreign state in relevant part as follows:

   (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

   (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable convention on service of judicial documents; or

   (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of summons and complaint, together with a translation of each into the official language of the foreign state—

   . . . .

   (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b).

■ The parties agree that no special arrangement existed between them for service of process that would satisfy section 1608(b)(1). Section 1608(b)(2) contains two procedures for effectuating service. The first procedure is unavailable here because it only applies to service within the United States. *See Banco Metropolitano S.A. v. Desarrollo de Autopistas,* 616 F.Supp. 301, 304 (S.D.N.Y.1985); *Straub v. A P Green, Inc.,* 38 F.3d 448, 452 (9th Cir.1994). The defendants claim that the only means of service available to the plaintiff was pursuant to the last clause of section 1608(b)(2), which states that service may be made "in accordance with an applicable convention on service of judicial documents." 28 U.S.C. § 1608(b)(2). The applicable convention is the Hague Convention. *Richmark Corp. v. Timber Falling Consultants, Inc.,* 937 F.2d 1444, 1448 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). Both parties agree that the amended complaint was not properly served pursuant to the Hague Convention.

Because the requirements of sections 1608(b)(1) and 1608(b)(2) were not satisfied, we turn to subdivision (b)(3). At first blush, the service of process, effectuated in conformity with the Court's order of March 7, 1995, appears to satisfy section 1608(b)(3)(C) which permits service "as directed by order of the court consistent with the law of the place where service is to be made." Bybee has submitted a declaration from a German law expert stating that her service is consistent with German law. Oberer Declaration ¶ 1(c). Section 1608(b)(3), however, explicitly states that it is only available "if service cannot be made under paragraphs (1) or (2)." 28 U.S.C. § 1608(b)(3).

Bybee does not claim that service could not be effectuated pursuant to the Hague Convention; in fact, it was originally. Instead, she apparently sought an alternative means of service in order to avoid the cost of service under the procedures required by the Hague Convention. *See* Plaintiff's Memorandum of Law, p. 25 ("It is fundamentally inequitable that defendants should benefit from their initial default by forcing plaintiff to undergo the expense of reservice under the Hague Convention."). Furthermore, she believed, at that time, that this service was proper under the Hague Convention. *See Harris v. Browning–Ferris Indus. Chemical Serv. Inc.,* 100 F.R.D. 775, 777 (M.D.La.1984) (noting that although the Hague Convention generally permits service by mail, Germany explicitly rejected that provision), *aff'd* 806 F.2d 259 (5th Cir.1986) (Table). An interpretation of the FSIA permitting service pursuant to section 1608(b)(3) simply as a cost savings measure would eviscerate the second

clause of section 1608(b)(2) for all countries, such as Germany, that have opted out of the service by mail provision of the Hague Convention because service pursuant to 28 U.S.C. § 1608(b)(3) will invariably be less expensive than compliance with the Hague Convention. Moreover, such an interpretation flies in the face of the plain words of the statute that service cannot be made pursuant to section 1608(b)(3) unless service "cannot be made under paragraphs (1) or (2)." 28 U.S.C. § 1608(b)(3), *see Richmark Corp.*, 937 F.2d at 1448; *Lippus v. Dahlgren Mfg. Co.*, 644 F.Supp. 1473, 1478 (E.D.N.Y.1986). Thus, service of the amended complaint did not comply with the requirements of the FSIA.

■ Bybee next argues that defendants waived any challenge to the service of process by virtue of Dr. Raeder's letter in response to her serving the original complaint. Dr. Raeder's letter, however, could not waive defendants' objections to the service of the amended complaint because the letter does not constitute an answer to either complaint and it was mailed prior to the service of the amended complaint. Moreover, defendants' motion contesting the sufficiency of service was filed timely pursuant to Fed.R.Civ.P. 12(h)(1). *See, e.g., Santos v. State Farm Fire and Casualty Co.*, 902 F.2d 1092, 1095 (2d Cir.1990). Thus, defendants did not waive their right to challenge the service of process and the motion is timely.

■ As noted above, Bybee has cross-moved for leave to re-serve the amended complaint. Although such a request would normally be granted, *see, e.g., First City v. Rafidain Bank*, No. 90 Civ. 7360, 1992 WL 296434, at *1 (S.D.N.Y. Oct. 6, 1992), it would be a misuse of judicial resources—and a waste of the resources of the parties—to permit Bybee to effectuate proper service only to have the Court dismiss her case at a later date on a renewed motion to dismiss the amended complaint on the grounds of forum non conveniens. *See Alberti v. Empresa Nicaraguense De La Carne*, 705 F.2d 250, 253 (7th Cir.1983). More importantly, because the amended complaint was not properly served, the original complaint remains in effect. *See International Con-*

*trols Corp. v. Vesco*, 556 F.2d 665, 668–69 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 758 (1978). Therefore, defendants' motion to dismiss for lack of personal jurisdiction due to improper service of the amended complaint must be denied. Thus, this Court will now address defendants' argument that the amended complaint should be dismissed pursuant to the doctrine of forum non conveniens.

### IV. *Forum Non Conveniens*

■ Defendants contend that the amended complaint should be dismissed pursuant to the doctrine of forum non conveniens. In deciding such an application, the Court has considerable discretion. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981); *see also Gordon v. Long Bay (1980) Ltd.*, No. 94 Civ. 2141, 1995 WL 489474, at *3 (S.D.N.Y. Aug. 16, 1995). Initially, the Court must determine whether a suitable alternative forum exists. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947); *Transunion Corp. v. Pepsico, Inc.*, 640 F.Supp. 1211, 1215 (S.D.N.Y. 1986), *aff'd*, 811 F.2d 127 (2d Cir.1987). Assuming such an alternative forum exists, the decision then requires a balancing of the relevant private and public interest factors in order "to determine where the trial will be most convenient and will serve the ends of justice." *R. Maganlal & Co. v. M.G. Chemical Co., Inc.*, 942 F.2d 164, 167 (2d Cir.1991); *see also Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. at 843; *Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 1001 (2d Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993). In order to prevail, defendants must show that the balance is strongly in favor of litigating in Germany in order to overcome the substantial weight accorded plaintiff's choice of forum. *R. Maganlal & Co.*, 942 F.2d at 167–68; *Alcoa S.S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 151 (2d Cir.), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980).

■ In *Transunion Corp.*, an opinion by Judge Edward Weinfeld characterized by the Second Circuit as "typically careful and complete," *see* 811 F.2d at 129, Judge Wein-

feld summarized the relevant public and private factors—originally set forth in *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. at 843, and *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947)—as follows:

> The private interest factors include the location of evidence and witnesses, the availability of process to compel attendance of unwilling witnesses, as well as other practical problems that make trial of a case easy, expeditious, and inexpensive. The public interest factors include the difficulty which arises when a forum must apply foreign choice of law rules and foreign law, the administrative problems which follow when litigation is added to existing heavy caseloads in congested centers rather than being handled at its origin, and the imposition of jury duty upon a community which has no relation to the litigation. In addition, the court must evaluate the enforceability of possible judgment and the relative advantages and obstacles to fair trial.

*Transunion Corp.*, 640 F.Supp. at 1215 (internal quotations and footnotes omitted) (collecting cases).

In this case, no claim is made that Germany lacks jurisdiction to hear this case. Defendants have also submitted a declaration—uncontested by plaintiff—stating that jurisdiction would be proper in the German courts. *See* Verhoeven Declaration, ¶¶ 6–7. Thus, it appears that the initial burden of showing a suitable alternative forum is satisfied.

Each side to this litigation asserts that the other's forum would impose significant burdens and costs. Defendants reside in Germany while plaintiff resides in New York. Both sides claim to have witnesses in their respective countries and neither have directed the Court to the existence of any unwilling witnesses. Due to the development of worldwide travel, mere distance alone is not a sufficient basis on which to conclude that a forum is inconvenient. *Effron v. Sun Line Cruises, Inc.*, No. 94–9279, 1995 WL 546238, at *4 (2d Cir. Sept. 11, 1995). The argument of each side that the other's preferred forum is inconvenient is unpersuasive.

The "other practical problems that make trial of a case easy, expeditious, and inexpensive," *see Transunion Corp.*, 640 F.Supp. at 1215, and the public interest factors, however, weigh heavily in favor of conducting the trial in Germany. The need to apply foreign law is a factor that weighs in favor of dismissal. *Id.* at 1217–18 (collecting cases). Under New York choice-of-law principles, the applicable law appears to be that of Germany. *See, e.g., Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 137 (2d Cir.1991). Although this Court is able to apply German law when necessary, *see Manu Int'l S.A. v. Avon Prod., Inc.*, 641 F.2d 62, 67 (2d Cir.1981), it makes no pretense that it could do so as knowledgeably or as efficiently as a German tribunal. *See, e.g., Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 983 (2d Cir.1993); *see also Conte v. Flota Mercante Del Estado*, 277 F.2d 664, 667 (2d Cir.1960) (Friendly, J.) (discussing hazards of applying foreign law). Although Bybee now questions the applicability of German law, her amended complaint alleges that she is entitled to certain employment benefits "as a matter of German law." Amended Complaint, ¶¶ 19, 16–18. Without conclusively resolving the conflict-of-law issue, it is reasonable to assume for purposes of this motion that the applicable law will be the law of Germany. *See Transunion*, 811 F.2d at 129.

Additionally, the contract at issue is written in German, provides for payment in deutsche marks, and defendants and certain other witnesses may require interpreters. While the necessity of obtaining translations, calculating exchange rates and the likelihood of needing interpreters are relatively minor, they are decidedly "practical problems" which are among the private interest factors to be taken into account by this Court pursuant to *Gulf Oil Corp.*, 330 U.S. at 508–09, 67 S.Ct. at 843, and *Koster*, 330 U.S. at 524, 67 S.Ct. at 831, in determining in which forum the trial of this action will be most "easy, expeditious, and inexpensive." *Transunion*, 640 F.Supp. at 1215.

In regard to the public interest factors which should be part of the calculus of this

determination, Germany has a far greater interest than the United States. Not only does the subject matter involve a German language contract requiring performance in Germany and payment in German currency, but it also involves an allegation against a significant cultural institution in which Germany has a substantial interest. *See Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L,* 675 F.Supp. 1439, 1448 (S.D.N.Y.1987) (discussing France's interest in the Tour de France). The interest of the United States in this dispute, however, is minimal because the contract was to be performed in Germany and paid in German currency. The only connection of the United States to this litigation is Bybee's place of residence and the fact that the audition and negotiations commenced here.

■ Although the plaintiff's choice of forum is to be accorded great weight, this factor alone is not dispositive. *See Overseas Nat'l Airways, Inc. v. Cargolux Airlines Int'l, S.A.,* 712 F.2d 11, 14 (2d Cir.1983). Furthermore, because Bybee entered into a contract with a German agency to perform in Germany and she was to be paid in German currency, she should not now be surprised to be forced to litigate her suit in Germany. *See Alcoa S.S. Co.,* 654 F.2d at 154–58; *Morrison Law Firm v. Clarion Co.,* 158 F.R.D. 285, 287 (S.D.N.Y.1994) (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)), *aff'd,* 60 F.3d 811 (2d Cir.1995) (Table). While certain of the negotiations leading to the contract occurred in New York and Bybee is a New York resident, these factors are not enough to overcome the substantial factors in favor of dismissal. *See Transunion Corp.,* 811 F.2d at 129. This Court, therefore, exercises its discretion in favor of granting the motion on the basis of the doctrine of forum non conveniens.

■ Defendants' motion to dismiss the amended complaint on the grounds of forum non conveniens is granted on condition that defendants waive any statute of limitations defense that would make a German forum unavailable to the plaintiff. *See Blanco,* 997 F.2d at 984 ("forum non conveniens dismissals are often appropriately conditioned to

protect the party opposing dismissal") (collecting cases). Plaintiff's cross-motion for leave to re-serve the amended complaint is denied.